**LYONS & FLOOD, LLP**
The Towers, Suite 206
111 Great Neck Road
Great Neck, NY 11021
(212) 594-2400

*Attorneys for Plaintiff*
*MSC Mediterranean Shipping Company S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MSC MEDITTERANEAN SHIPPING COMPANY S.A., <br><br> Plaintiff, <br><br> -against- <br><br> ONE BANANA NORTH AMERICA CORP.; AGROBERRUZ S.A.; BANANASHI S.A.; and OBSA ORO BANANA S.A., <br><br> Defendants. | 22 Civ. 5425 |

## <u>VERIFIED COMPLAINT</u>

Plaintiff MSC MEDITERRANEAN SHIPPING COMPANY S.A. ("MSC"), by its

attorneys, Lyons & Flood, LLP, as and for its Verified Complaint against Defendants ONE

BANANA NORTH AMERICA CORP. ("OBNA"), AGROBERRUZ S.A. ("AGROBERRUZ"),

BANANASHI S.A. ("BANANASHI"), and OBSA ORO BANANA S.A. ("OOB"), states as

follows:

## NATURE OF THE ACTION

1.      MSC brings this action seeking an injunction, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and this Court's inherent authority, to prevent OBNA from wrongfully circumventing its contractual obligation to litigate its cargo claims against MSC only before this Court.

2.      OBNA is the consignee and beneficial owner of a number of cargoes of bananas that were carried aboard MSC vessels pursuant to sea waybills issued by MSC. Although the applicable terms and conditions of those sea waybills required that any claims of cargo damage against MSC be brought exclusively in this forum, OBNA has instead sought to commence a New York arbitration proceeding against MSC.

3.      Because its cargo claims are manifestly not subject to any agreement to arbitrate, MSC therefore seeks a declaration as to the non-arbitrability of those claims and an injunction against OBNA's continued attempt to arbitrate those claims against MSC.

4.      Separately, MSC also brings this action to enforce the terms of Letters of Indemnity issued by AGROBERRUZ, BANANASHI, and OOB, both on their own behalf and as agents of OBNA. The Defendants, in order to induce MSC to carry the shipments of bananas using containers that were inadequate to protect these shipments from spoilage under the circumstances, agreed to issue Letters of Indemnity holding harmless and indemnifying MSC with respect to any liability, loss, damage, or expense of whatever nature in relation to the carriage of the banana cargoes. In effect, the Defendants (including OBNA) agreed that MSC was to bear no responsibility for any damage to the banana shipments. MSC is entitled to the benefit of its bargain and seeks enforcement of the Defendants' obligations under the Letters of Indemnity.

## PARTIES

5.      At all material times, Plaintiff MSC was and still is a corporation organized and existing under the laws of Switzerland, and with an office and place of business at 12-14 Chemin Rieu, 1208 Geneva, Switzerland.

6.      At all material times, Defendant OBNA was and still is a domestic profit corporation organized and existing under the laws of the State of Florida, and with its principal place of business located at 1607 Ponce de Leon Blvd, Suite 201, Miami, Florida 33134.

7.      At all material times, Defendant AGROBERRUZ was and still is a company incorporated under the laws of Ecuador, and with its principal place of business located at Av. Juan Tanca Marengo Km. 1.5, Centro Comercial Dicentro Bldg., Floor 17, Guayaquil, Guayas, Ecuador.

8.      At all material times, Defendant BANANASHI was and still is a company incorporated under the laws of Ecuador, and with its principal place of business located at Ave. Carlos Julio Arosemena Km. 2.5, Edificio La Linea, Piso 1, oficina 6, Miraflores, Guayaquil, Guayas, Ecuador.

9.      At all material times, Defendant OOB was and still is a company incorporated under the laws of Ecuador, and with its principal place of business located at Av. 25 de Junio 620, Entre Santa Rosa y Vela, Machala, El Oro, Ecuador.

## JURISDICTION AND VENUE

10.      This is a civil action for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the FAA, 9 U.S.C. § 1 *et seq.*, and this Court's inherent authority.

11.     This Court has subject matter jurisdiction over the claims asserted against OBNA, AGROBERRUZ, BANANASHI, and OOB under 28 U.S.C. § 1333(1) in that the claims arise under maritime contracts and are therefore within this Court's admiralty or maritime jurisdiction.

12.     In the alternative, this Court has supplemental jurisdiction over the claims asserted against AGROBERRUZ, BANANASHI and OOB under 28 U.S.C. § 1367(a) in that the claims are asserted in the context of a civil action of which the district courts have original jurisdiction, namely admiralty jurisdiction under 28 U.S.C. § 1333, and the claims asserted against AGROBERRUZ, BANANASHI and OOB are so closely related to the claims against OBNA that they form part of the same case or controversy under Article III of the Constitution.

13.     Defendants OBNA, AGROBERRUZ, BANANASHI, and OOB are subject to the personal jurisdiction of this Court by virtue of their agreement to personal jurisdiction over them in this forum pursuant to the terms and conditions of the sea waybills to which they are parties and are bound, and which are the subject of this Complaint.

14.     Venue is proper in this District in that the dispute resolution clause in the sea waybills that are the subject of this Complaint provides that "[i]t is hereby specifically agreed that … any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply."

15.     In the alternative, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) in that the Defendants are subject to the Court's personal jurisdiction with respect to this action and there is no other District in which this action may otherwise be brought under 28 U.S.C. § 1391.

**RELEVANT FACTS**

*Background of MSC*

16.     At all material times, Plaintiff MSC was and is a vessel operating common carrier engaged in the business of the ocean transportation of containerized cargo.

17.     As an ocean common carrier, MSC's activities are regulated by the Shipping Act of 1984, as amended (46 U.S.C. §§ 40101-41309) ("Shipping Act"), and subject to regulatory oversight by the Federal Maritime Commission.

18.     The Shipping Act permits ocean common carriers and shippers to enter into individual, confidential service contracts for the international transportation of cargo, but requires that these contracts be filed with the Federal Maritime Commission.

19.     The purpose of a service contract under the Shipping Act is that it allows the ocean carrier to commit to a certain rate or rate schedule and a defined service level, in exchange for which a shipper will commit to providing a certain volume or portion of cargo over a fixed time period. *See* 46 U.S.C. § 40102(21) (definition of service contract).

20.     In the absence of such an agreement as reflected in a service contract filed with the Federal Maritime Commission, MSC is free to charge shippers the "spot" or market-based rate for its shipping services, as provided for in MSC's published tariffs.

21.     The procedure for booking a shipment with MSC generally involves the following five separate stages:

      a.     a shipper contacts MSC via its local agent to provide the basic information concerning the number and type of goods to be shipped, the type of containers to be used, the origin and destination ports involved, and the relevant timeframe for the shipment;

      b.     if MSC accepts the booking, a Booking Confirmation is issued and sent to the shipper for review;

c.   if the shipper intends to move forward with the shipment, it must send a trucker to pick up an empty MSC container, pack the goods to be shipped into the container, and then deliver the sealed container to the load port by the deadlines set forth in the Booking Confirmation;

d.   if MSC does not reject the shipment for any reason and there is space aboard the vessel, MSC will instruct the terminal at the load port to stow the container aboard the vessel; and

e.   MSC will then issue a bill of lading or sea waybill to the shipper, which sets forth the terms and conditions that will govern the shipment, including any claims for loss or damage that may arise.

22.   One of the services that MSC offers to its customers is the carriage of perishable goods, including foodstuffs, in refrigerated containers ("reefers").

23.   For shipments of produce, MSC offers the use of either ordinary reefers, which only allow for temperature control, or reefers which are additionally equipped with atmosphere control technology allowing for the management of oxygen and carbon dioxide levels and the removal of ethylene (thus slowing the ripening of produce and helping to preserve its quality beyond what can be achieved by refrigeration alone). These latter, specialized reefers are called "ACS reefers" and are slightly more expensive than regular reefers.

24.   Thus, when a shipper contacts MSC to book a shipment of produce, MSC will consider the overall estimated transit time and the nature of the commodities involved (including their shelf-life) and recommend the usage of ACS reefers when appropriate. Ultimately, however, it is the responsibility of the shipper to decide which type of container to use, as well as the temperature and other settings to be applied during carriage.

*Background of OBNA and the exporters*

25.     OBNA is part of the AgroAmerica Group of Companies ("AgroAmerica"), along with its sister entities One Banana, Inc. and Bananera Nacional S.A. AgroAmerica is a vertically integrated group of companies with over 13,000 employees. It is one of the largest producers of tropical fruits in Central America, with customers including large U.S.-based grocery chains and wholesalers. As part of AgroAmerica, OBNA is in the business of importing fresh bananas from Central and South America to the U.S. for resale.

26.     Defendants AGROBERRUZ, BANANASHI, and OOB are exporters of fresh bananas based in Ecuador. OBNA uses them as suppliers of bananas for resale in the U.S.

27.     OBNA started using MSC for shipping services beginning in 2020 on a "spot" basis, meaning that the freight rates fluctuated according to market conditions and there was no service contract in place between the parties.

*Negotiations between MSC and OBNA*

28.     In December 2020, OBNA began discussions with MSC's local agent in Ecuador, Mediterranean Shipping Company Del Ecuador Compania Anonima ( "MSC Ecuador") regarding entering into a negotiated service contract with MSC. As part of these discussions, OBNA requested that MSC Ecuador provide it with a quotation for a weekly shipment of five containers from Puerto Bolivar, Ecuador, to Seattle, Washington.

29.     On January 11, 2021, MSC Ecuador provided OBNA with the requested quotation, and that day OBNA confirmed acceptance of the quotation by email. True and accurate copies of the January 11, 2021, emails (in Spanish) providing the quotation to OBNA and OBNA's acceptance, together with an English translation of same, are attached hereto as **Exhibit A**.

30.     When it provided the quotation, MSC Ecuador noted that a congestion surcharge was being applied due to the congestion experienced in the West Coast of the U.S. This reflected the fact, which was well-publicized at the time, that many ports in the West Coast of the U.S. (including Seattle) were experiencing congestion due to a number of factors, including longshoremen work absences related to COVID-19, truck and chassis shortages, and surges of imports clogging terminals. This congestion only worsened as the year progressed.

31.     Indeed, on March 2, 2021, before any of the banana shipments under the quotation were made, MSC Ecuador wrote to OBNA to advise that heavy congestion persisted at ports on the West Coast of the U.S. (including Seattle). True and accurate copies of the March 2, 2021, email and attachment (in Spanish) in which MSC informed OBNA of the continued port congestion, together with an English translation of same are attached hereto as **Exhibit B**.

32.     Because MSC does not operate a liner service carrying containers directly from Ecuador to Seattle, the quotation provided by MSC Ecuador involved transshipment of containers at the port of Rodman, Panama (located near the Pacific entrance of the Panama Canal). In other words, one vessel would carry containers from Ecuador to Panama, where they would then be discharged and stored until the arrival of a second vessel at Panama to complete the carriage to Seattle.

33.     The quotation provided by MSC Ecuador noted that the "TT" or transshipment time would be "30 dias via Rodman" indicating that MSC's estimated duration of the shipment would be 30 days. *See* **Exhibit A** at p. 1.

34.     Because this estimated transshipment time was close to the shelf-life of fresh bananas even when properly refrigerated, and the ongoing port congestion issues which could easily result in further shipment delays, the quotation provided by MSC Ecuador contained the notation "+ACS $500 per cntr (Starcool)" indicating that an additional $500 per container surcharge was being applied for the use of ACS reefers as part of the quotation. *See* **Exhibit A** at p. 1.

35.     MSC Ecuador conditioned its quotation for the carriage of bananas on the use of ACS reefers because it considered that the carriage of bananas in non-ACS reefers over this route would involve an increased risk of damage to the bananas.

***OBNA's request to use non-ACS reefers and agreement to hold MSC harmless***

36.     When it accepted the quotation provided by MSC Ecuador on January 11, 2021, OBNA agreed to the use of ACS reefers.

37.     However, in late February 2021, in connection with discussions concerning the booking of its banana shipments, OBNA suddenly informed MSC Ecuador that it did ***not*** want to use ACS reefers for its shipments of bananas.

38.     In response, MSC Ecuador advised OBNA that, due to the transit time to Seattle, the contract it had offered to OBNA only contemplated usage of ACS reefers, and that if ACS reefers were not going to be used, then the exporter must sign a Letter of Indemnity ("LOI").

39.     On March 1, 2021, OBNA confirmed that it would sign the LOI if necessary but that it would be shipping the bananas without using ACS reefers. True and accurate copies of the March 1, 2021, email chain (in Spanish) in which OBNA confirmed that it agreed to sign a LOI, together with an English translation of same are attached hereto as **Exhibit C**.

40.     Ultimately, all of the banana shipments booked on behalf of OBNA in 2021 were shipped in non-ACS reefers, and the exporters who made the bookings on behalf of OBNA signed LOIs in connection with all of these shipments.

41.     The LOIs were signed by AGROBERRUZ, BANANASHI, and OOB on behalf of OBNA and provided that they agreed "[t]o indemnify MSC, its servants and agents and to hold all of them harmless in respect of any liability, loss, damage or expenses of whatever nature which they may sustain in relation to the carriage of the above said cargo." True and accurate copies of the LOIs signed by AGROBERRUZ, BANANASHI, and OOB on behalf of OBNA are attached hereto as **Exhibit D**.

42.     Thus, in exchange for MSC's agreement to carry the bananas in non-ACS reefers, which involved much greater risk of damage to the bananas, OBNA, via its agents AGROBERRUZ, BANANASHI, and OOB, promised to hold MSC harmless and indemnify MSC with respect to any cargo claims that might arise out of the carriage of the banana shipments.

***Issuance of the service contract between MSC and OBNA***

43.     The fact that OBNA was requesting MSC to provide it with a quotation for a fixed freight rate for the shipment of its bananas from Ecuador to Seattle meant that if MSC were to so agree to a fixed freight rate it would need to be reflected in a confidential service contract filed with the Federal Maritime Commission.

44.     Accordingly, on March 3, 2021, MSC and OBNA entered into a service contract on MSC's own form, titled "Ocean Carrier Agreement," with an effective date of January 14, 2021, and a termination date of December 31, 2021 (the "service contract"). A true and accurate copy of the service contract is attached hereto as **Exhibit E**.

45.     Under the service contract, OBNA agreed that it would provide a minimum quantity commitment ("MQC") of 130 TEUS (*i.e.* equivalent to cargo volumes of 130 twenty-foot containers) of banana shipments for carriage from Ecuador to the U.S. and in exchange MSC agreed that the applicable freight rates for these shipments would be $2,730 per container if non-ACS Reefers were utilized and $2,775 if ACS Reefers were utilized. *See* **Exhibit E** at Appendix III.

46.     The terms of the service contract largely relate to the MQC requirement and freight rates, and the service contract is completely devoid of any provisions addressing the responsibilities of MSC or OBNA with respect to the carriage of cargo or liability in the event of a cargo claim (the only liability referenced is OBNA's liability in the event it failed to fulfill its MQC requirement).

***Issuance of the contracts of carriage for the banana shipments***

47.     Throughout 2021 a number of banana shipments were booked with MSC Ecuador by OBNA, via its agents AGROBERRUZ, BANANASHI, and OOB.

48.     By dealing with MSC Ecuador, the Defendants agreed to be subject to the terms and conditions of MSC Ecuador (the "Agency Terms"), a copy of which is available on MSC's website. A true and accurate copy of the Agency Terms in effect at all material times is attached hereto as **Exhibit F**.

49.     The preamble to the Agency Terms contains the following explanation about the terms and conditions that comprise the contract of carriage for a shipment of goods booked with MSC Ecuador:

> THE CONTRACT OF CARRIAGE AND ALL SERVICES OF THE CARRIER ARE SUBJECT TO THE CARRIER'S TERMS AND CONDITIONS (EITHER, WHEN A BILL OF LADING IS ISSUED SUBJECT TO THE "***BILL OF LADING STANDARD TERMS AND CONDITIONS***", OR, IN ALL OTHER CASES SUBJECT TO THE "***SEAWAYBILL TERMS AND CONDITIONS***"), THE BOOKING TERMS AND THE LOCAL AGENCY TERMS AND CONDITIONS AT THE PORTS OF LOADING, TRANSSHIPMENT AND DISCHARGE.

*See* **Exhibit F** at p. 3 (emphasis in original).

50.     Accordingly, by booking shipments with MSC Ecuador, the Defendants agreed that those shipments (and therefore any claims concerning them) would be governed by: (a) the sea waybill terms and conditions, (b) the "booking terms," and (c) the Agency Terms.

51.     The "booking terms" refers to the terms and conditions contained in the Booking Confirmation form that is issued by MSC in connection with each shipment that a customer seeks to book. A true and accurate copy of one of the Booking Confirmation forms issued by MSC in connection with one of the OBNA banana shipments is attached hereto as **Exhibit G**.

52.     Consistent with the preamble in the Agency Terms, the MSC booking terms provide that:

> THIS BOOKING CONFIRMATION FORMALIZES THE FREIGHT CONTRACT CONCLUDED BETWEEN THE MERCHANT (AS DEFINED IN CLAUSE 1 OF THE MSC BILL OF LADING/ SEA WAYBILL TERMS & CONDITIONS FOUND AT WWW.MSC.COM/CHE/CONTRACT-OF-CARRIAGE) AND MSC, AS A CONSEQUENCE OF WHICH BOTH BOOKING PARTY AND SHIPPER BECOME JOINTLY AND SEVERALLY CONTRACTUAL PARTNERS OF MSC. THE CONTRACT OF CARRIAGE AND ALL SERVICES OF THE CARRIER ARE SUBJECT TO THE CARRIER'S TERMS & CONDITIONS WHEN A BILL OF LADING IS ISSUED SUBJECT TO THE "BL STANDARD TERMS AND CONDITIONS" OR, IN ALL OTHER CASE SUBJECT TO THE "SEA WAYBILL TERMS & CONDITIONS", THE PRESENT BOOKING TERMS AND THE LOCAL AGENCY TERMS & CONDITIONS AT PORTS OF LOADING, TRANSSHIPMENT AND DISCHARGE.

*See* **Exhibit G** at p. 3.

53.     The sea waybill terms and conditions referred to are MSC's standard sea waybill terms and conditions, which are incorporated by reference into the sea waybills issued by MSC with respect to shipments of cargo. A true and accurate copy of one of the sea waybills issued by MSC in connection with one of the OBNA banana shipments is attached hereto as **Exhibit H**.

54.     As noted on the top of each sea waybill, a large-print version of MSC's sea waybill terms and conditions is available on MSC's website. A true and accurate copy of the large-print version of MSC's standard sea waybill terms and conditions is attached hereto as **Exhibit I**.

55.     That the sea waybill terms and conditions evidence the contract of carriage is explicitly confirmed in the service contract. *See* **Exhibit E** at Clause 6.1 ("Each shipment tendered under this Agreement shall be evidenced by the Carrier's bill of lading or sea waybill as the case may be … whose terms and conditions are incorporated herein by reference.")

56.     This incorporation of the sea waybill terms and conditions into the service contract does not mean that the service contract becomes the contract of carriage governing the banana shipments. Instead, this incorporation simply ensures that MSC has the benefit of all the provisions of the sea waybill terms and conditions, unless there is a specific conflict between those terms and the terms of the service contract. *See* **Exhibit E** at Clause 6.3 providing that "[i]n the event of conflict and to such extent, the terms of this Agreement shall prevail over the terms and conditions of the Bill of Lading." By design there is no conflict concerning cargo claims, however, because nothing in the service contract addresses liability for cargo claims, including how they should be resolved.

57.     Included among the sea waybill terms and conditions is Clause 4.4 which provides that the "Merchant" (a defined term which includes OBNA) "undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Sea Waybill, whether or not arising out of negligence or misdelivery on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof." *See* **Exhibit I** at Clause 4.4.

58.     This provision makes it clear that any cargo claims against MSC can only be made in accordance with the sea waybill terms and conditions.

59.     Those sea waybill terms and conditions further provide that the "Merchant" agrees that, in the case of cargoes carried to or from the U.S., "suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply" (*see* **Exhibit I** at Clause 10.3), and that "the Carrier shall be discharged from all liability if suit is not commenced within one (1) year after delivery of the Goods or the date that the Goods should have been delivered for claims related to loss or damage during the Port-to-Port carriage…." *See* **Exhibit I** at Clause 10.2.

60.     The requirement that suits relating to cargo claims involving shipments to or from the U.S. be brought only in the Southern District of New York is mirrored in the Agency Terms as well as the MSC booking terms contained in the Booking Confirmation forms. *See* **Exhibit F** at Clause 4.1 and **Exhibit G** at p. 3.

61.     Thus, the contract of carriage (which is evidenced by the sea waybill terms and conditions, the MSC booking terms, and the Agency Terms) clearly provides that to the extent that a "Merchant" such as OBNA seeks to assert cargo claims against MSC, it may do so only in accordance with the sea waybill terms and conditions, which imposes two key requirements: (a) suit must be commenced within one year after delivery of the goods; and (b) suit must be filed in the Southern District of New York.

***Some of OBNA's shipments experienced delays***

62.     In total, AGROBERRUZ, BANANASHI, and OOB, acting on behalf of OBNA, booked several hundred containers of bananas for carriage by MSC in 2021 from Ecuador to Seattle via Panama, none of which were carried in ACS reefers.

63.     The carriage of many of these banana shipments was subject to delays caused by the ongoing congestion issues affecting the U.S. West Coast ports.

64.      As noted above, MSC had repeatedly warned OBNA about the ongoing and worsening port congestion issues, even before any of the banana shipments were booked.

65.      MSC also, via its Agency Terms, MSC booking terms, and sea waybill terms and conditions, made it clear to OBNA that the estimated transit times provided by MSC could be delayed or even cancelled without notice, and that in such cases MSC will not be liable for any resulting damages. *See* **Exhibit F** (Agency Terms) at Clause 3.3; **Exhibit G** (MSC booking terms) at p. 3; and **Exhibit I** (sea waybill terms and conditions) at Clause 8.

***OBNA's Notice and Demand for Arbitration***

66.      On May 4, 2022, OBNA served MSC with a Notice and Demand for Arbitration alleging "damages in excess of $2,726,467.24" in connection with alleged delays to 130 banana shipments. A true and accurate copy of OBNA's Notice and Demand for Arbitration (without exhibits) is attached hereto as **Exhibit J**.

67.      OBNA premised its right to arbitration on a "GOVERNING LAW AND JURISDICTION" clause in the service contract which provided that:

> Any disputes arising out of or in connection with this Agreement which cannot be resolved by the Parties themselves shall be resolved by binding arbitration conducted in New York and in accordance with the rules of the Society of Maritime Arbitrators (the "SMA"). The number of arbitrators shall be three. The Parties shall each appoint one arbitrator and the two so appointed shall appoint the third who will be the president of the arbitral tribunal. The seat, or legal place, of arbitration shall be NYC, NY. The language to be used in the arbitral proceedings shall be English. The decision of the arbitrators shall be final and may be enforced by any court or other forum having jurisdiction.

*See* **Exhibit J** at p. 3; **Exhibit E** at Clause 14.2.

68.     Notwithstanding that this clause specifically provides that arbitration is only applicable to "disputes arising out of or in connection with this Agreement," the Notice and Demand for Arbitration identified five "claims for relief" only one of which plausibly relates to the service contract.

69.     The five claims for relief set forth by OBNA in its Notice and Demand for Arbitration are: (a) failure to exercise due care under the U.S. Carriage of Goods by Sea Act, 49 Stat. 1207 (1936), *reprinted in* 46 U.S.C.A. § 30701 (note) ("COGSA"); (b) unreasonable deviation under COGSA; (c) breach of service contract; (d) breach of the contract of carriage; and (e) violation of the Harter Act, 46 U.S.C. §§ 30701 *et seq*. *See* **Exhibit J** at pp. 11-12.

70.     Of these five claims for relief, only the claim for breach of the service contract arises out of the service contract and is therefore properly subject to arbitration. That claim is described as MSC's alleged breach of Clause 5.3 of the service contract. *See* **Exhibit J** at ¶¶ 47-48.

71.     The remaining claims for relief either arise out of the contract of carriage for the shipments, which, as noted above, is evidenced by the Agency Terms, the MSC booking terms, and the sea waybill terms and conditions, or arise out of the application of Federal statutes (COGSA and/or the Harter Act) which are nowhere referenced in the service contract.

72.     Moreover, regardless of how they are styled or labeled, the essence of OBNA's claims is that its banana shipments were delivered in a damaged condition. In other words, OBNA's claims are garden-variety claims of loss or damage to shipments of cargo; and, as such, they clearly arise out of the contract of carriage for each shipment, rather than a dispute concerning the terms of the service contract.

73.     Because OBNA's cargo claims are governed by the contract of carriage, they are subject to the terms and conditions of the contract of carriage, including the requirements that suit must be commenced against MSC within one year after delivery of the goods, and suit must be filed exclusively in the United States District Court for the Southern District of New York.

74.     Consequently, OBNA's cargo claims (as opposed to its claim for breach of the service contract) are not properly subject to any agreement to arbitrate, and MSC therefore seeks a declaration as to the non-arbitrability of those cargo claims and/or an injunction against OBNA's continued attempt to arbitrate those cargo claims against MSC

## FIRST CAUSE OF ACTION
## <u>DECLARATORY JUDGMENT THAT OBNA'S CLAIMS ARE NOT ARBITRABLE</u>

75.     Under Section 1 of the Declaratory Judgment Act, 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, this Court is authorized to declare the rights and other legal relations of any interested party seeking such a declaration. Under Section 2 of the Declaratory Judgment Act, 28 U.S.C. § 2202, this Court is further authorized to grant additional relief, including injunctive relief, against an adverse party whose rights have been determined by declaratory judgment.

76.     Such a justiciable controversy exists between the parties to this action by virtue of the wrongful initiation by OBNA of an arbitration against MSC with respect to cargo claims that are not arbitrable.

77.     Accordingly, MSC asks this Court to declare that OBNA's cargo claims are not subject to the arbitration provision in the service contract. MSC requests, pursuant to Fed. R. Civ. P. 57, that the Court order a speedy hearing of this declaratory judgment action.

## SECOND CAUSE OF ACTION
## INJUNCTION AGAINST OBNA'S ARBITRATION

78.     Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, this Court has the authority to enjoin an arbitration.

79.     This Court also has "inherent authority to protect [its] proceedings and judgments in the course of discharging [its] traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996).

80.     OBNA has asserted cargo claims against MSC in the arbitration and, unless enjoined, will continue to pursue such claims in arbitration.

81.     As a matter of law, unless OBNA is enjoined from pursuing its cargo claims in the arbitration proceeding, MSC will suffer irreparable harm because it will be forced to arbitrate a dispute it has not agreed to arbitrate, and be forced to incur the substantial time and expense of defending itself in the arbitration proceeding, or risk an adverse outcome in those proceedings, even though MSC is not legally compelled to arbitrate OBNA's cargo claims.

82.     Being compelled to arbitrate a dispute when the parties have not agreed to arbitrate constitutes irreparable harm as a matter of law.

83.     The balance of equities weighs heavily in favor of an injunction.

84.     The public interest would be served by enjoining OBNA from pursuing its cargo claims against MSC in the arbitration proceeding because MSC has not agreed to arbitration of cargo claims.

## THIRD CAUSE OF ACTION
## <u>OBNA'S BREACH OF CONTRACT – CONTRACT OF CARRIAGE</u>

85.     OBNA, as the consignee named in the sea waybills issued by MSC, is a party to those sea waybills, as well as a "Merchant" thereunder, and therefore is bound by the sea waybill terms and conditions incorporated therein.

86.     OBNA, by wrongfully seeking to arbitrate its cargo claims against MSC, is in breach of Clause 4.4 of the sea waybill terms and conditions, which provides that "[t]he Merchant further undertakes that no claim or allegation in respect of the Goods shall be made against the Carrier by any Person which imposes or attempts to impose upon the Carrier any liability whatsoever in connection with the Goods or the carriage of the Goods other than in accordance with the terms and conditions of this Sea Waybill, whether or not arising out of negligence or misdelivery on the part of the Carrier, and if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof."

87.     MSC seeks specific performance of this provision and thereby seeks an order compelling OBNA to discontinue its wrongful arbitration of its cargo claims.

88.     In the alternative, MSC seeks indemnification from OBNA for the consequences of the wrongful arbitration of OBNA's cargo claims, including but not limited to, indemnification for any award against MSC resulting from those proceedings and any attorneys' fees or other costs incurred as a result of those proceedings.

## FOURTH CAUSE OF ACTION
### OBNA'S BREACH OF CONTRACT – LETTERS OF INDEMNITY

89.     OBNA, as the disclosed principal of agents AGROBERRUZ, BANANASHI, and

OOB, is bound by the actions of those parties.

90.     For each of the banana shipments for which it now asserts claims against MSC,

OBNA directed its agents AGROBERRUZ, BANANASHI and OOB to enter into LOIs agreeing

"[t]o indemnify MSC, its servants and agents and to hold all of them harmless in respect of any

liability, loss, damage or expenses of whatever nature which they may sustain in relation to the

carriage of the above said cargo." *See* **Exhibit D**.

91.     The LOIs further provide that "[t]his indemnity shall be governed by and

construed in accordance with the law and jurisdiction clause applicable to the relevant bill of

lading." *See* **Exhibit D**.

92.     The LOIs are not part of the contract of carriage for any shipments, but rather

exist as independent, enforceable contracts between OBNA and MSC.

93.     MSC seeks indemnification from OBNA for any losses it sustains as a result of

the carriage of these banana shipments, including but not limited to, indemnification for any

award against MSC resulting from the arbitration proceeding commenced by OBNA, and any

attorneys' fees or other costs incurred as a result of those proceedings.

**FIFTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT THAT OBNA MUST HOLD MSC HARMLESS**

94.     Under Section 1 of the Declaratory Judgment Act, 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, this Court is authorized to declare the rights and other legal relations of any interested party seeking such a declaration. Under Section 2 of the Declaratory Judgment Act, 28 U.S.C. § 2202, this Court is further authorized to grant additional relief, including injunctive relief, against an adverse party whose rights have been determined by declaratory judgment.

95.     Such a justiciable controversy exists between the parties to this action by virtue of OBNA's assertion of cargo claims against MSC notwithstanding OBNA's agreements in the LOIs to hold MSC harmless "in respect of any liability, loss, damage or expense of whatever nature" relating to the carriage of OBNA's banana shipments. *See* **Exhibit D**.

96.     Accordingly, MSC asks this Court to declare that OBNA must hold MSC harmless with respect to any losses it sustains as a result of the carriage of the banana shipments, including but not limited to, any award against MSC resulting from the arbitration proceeding commenced by OBNA, and any attorneys' fees or other costs incurred as a result of those proceedings. MSC requests, pursuant to Fed. R. Civ. P. 57, that the Court order a speedy hearing of this declaratory judgment action.

## SIXTH CAUSE OF ACTION
## <u>DECLARATORY JUDGMENT THAT MSC IS NOT LIABLE TO OBNA</u>

97.     Under Section 1 of the Declaratory Judgment Act, 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, this Court is authorized to declare the rights and other legal relations of any interested party seeking such a declaration. Under Section 2 of the Declaratory Judgment Act, 28 U.S.C. § 2202, this Court is further authorized to grant additional relief, including injunctive relief, against an adverse party whose rights have been determined by declaratory judgment.

98.     Such a justiciable controversy exists between the parties to this action by virtue of OBNA's assertion of cargo claims against MSC notwithstanding MSC's entitlement to complete exemption from liability under COGSA, which provides, among other things, in § 4(2)(q), that "[n]either the carrier nor the ship shall be responsible for loss or damage arising or resulting from … [a]ny other causes arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier."

99.     The delays in delivery of the banana shipments which allegedly caused damage to those cargoes were not the result of any fault of privity on the part of MSC, but rather were solely caused by port congestion issues entirely outside of MSC's control.

100.    Accordingly, MSC asks this Court to declare that MSC is exempted from liability to OBNA for its cargo claims by virtue of COGSA. MSC requests, pursuant to Fed. R. Civ. P. 57, that the Court order a speedy hearing of this declaratory judgment action.

## SEVENTH CAUSE OF ACTION
**AGROBERRUZ, BANANASHI, AND OOB'S BREACH OF CONTRACT**

101.    For each of the banana shipments for which OBNA now asserts claims against

MSC, AGROBERRUZ, BANANASHI and OOB entered into LOIs agreeing "[t]o indemnify

MSC, its servants and agents and to hold all of them harmless in respect of any liability, loss,

damage or expenses of whatever nature which they may sustain in relation to the carriage of the

above said cargo." *See* **Exhibit D**.

102.    The LOIs further provide that "[t]his indemnity shall be governed by and

construed in accordance with the law and jurisdiction clause applicable to the relevant bill of

lading." *See* **Exhibit D**.

103.    The LOIs are not part of the contract of carriage for any shipments, but rather

exist as independent, enforceable contracts between AGROBERRUZ, BANANASHI, and OOB

and MSC.

104.    MSC seeks indemnification from AGROBERRUZ, BANANASHI, and OOB for

any losses it sustains as a result of the carriage of the banana shipments, including but not limited

to, indemnification for any award against MSC resulting from the arbitration proceeding

commenced by OBNA, and any attorneys' fees or other costs incurred as a result of those

proceedings.

## EIGHTH CAUSE OF ACTION
## <u>DECLARATORY JUDGMENT AS TO AGROBERRUZ, BANANASHI, AND OOB</u>

105.    Under Section 1 of the Declaratory Judgment Act, 28 U.S.C. § 2201, in a case of

actual controversy within its jurisdiction, this Court is authorized to declare the rights and other

legal relations of any interested party seeking such a declaration. Under Section 2 of the

Declaratory Judgment Act, 28 U.S.C. § 2202, this Court is further authorized to grant additional

relief, including injunctive relief, against an adverse party whose rights have been determined by

declaratory judgment.

106.    Such a justiciable controversy exists between the parties to this action by virtue of

AGROBERRUZ, BANANASHI, and OOB's failure to hold MSC harmless with respect to the

cargo claims asserted by OBNA notwithstanding their obligations under the LOIs the entered

into with respect to the banana shipments that are the subject of OBNA's cargo claims.

107.    Accordingly, MSC asks this Court to declare that AGROBERRUZ,

BANANASHI, and OOB must hold MSC harmless with respect to any losses it sustains as a

result of the carriage of the banana shipments, including but not limited to, any award against

MSC resulting from the arbitration proceeding commenced by OBNA, and any attorneys' fees or

other costs incurred as a result of those proceedings. MSC requests, pursuant to Fed. R. Civ. P.

57, that the Court order a speedy hearing of this declaratory judgment action.

**WHEREFORE**, Plaintiff MSC respectfully requests that this Court enter an Order:

a. Declaring that OBNA's cargo claims including, without limitation, those claims asserted in its Notice and Demand for Arbitration of May 4, 2022, against MSC are not arbitrable;

b. Preliminarily and permanently enjoining OBNA from pursuing any cargo claims against MSC in the arbitration proceeding;

c. Compelling OBNA to specifically perform its obligations under the contracts of carriage by discontinuing its wrongful arbitration of cargo claims against MSC, or in the alternative, awarding MSC damages for OBNA's breach of the contracts of carriage applicable to the shipments for which it has wrongfully asserted cargo claims in the arbitration proceeding;

d. Awarding MSC damages for OBNA's breach of the letters of indemnity;

e. Declaring that OBNA must hold MSC harmless for any losses incurred by MSC relating to the banana shipments;

f. Declaring that MSC is exempted from liability to OBNA for its cargo claims by virtue of COGSA;

g. Awarding MSC damages for AGROBERRUZ, BANANASHI, and OOB's breach of the letters of indemnity;

h. Declaring that AGROBERRUZ, BANANASHI, and OOB must hold MSC harmless for any losses incurred by MSC relating to the banana shipments; and

i. Granting such other relief in favor of MSC and against Defendants, including costs of suit and attorneys' fees, as may be just and proper.

Dated: June 24, 2022

> LYONS & FLOOD, LLP
> Attorneys for Plaintiff
> MSC MEDITERRANEAN SHIPPING COMPANY S.A.
>
> By: _____
> Edward P. Flood, Esq.
> Jon Werner, Esq.
> The Towers, Suite 106
> 111 Great Neck Road
> Great Neck, NY 11021
> (212) 594-2400
> eflood@lyons-flood.com

## VERIFICATION

In accordance with 28 U.S.C. § 1746, I, Diana Andrade, on behalf of MSC's local agent in Ecuador, Mediterranean Shipping Company Del Ecuador Compania Anonima, declare, under penalty of perjury under the laws of the United States of America, that I have read and reviewed the foregoing Verified Complaint and state that the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Executed on June _24_, 2022.

_____
Diana Andrade
Liner of Americas and Far East

U:\FLOODDOC\2549280\Legal\Complaint.doc